IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DARRELL WAYNE BUMPAS, #210006,           )
                                         )
        Petitioner,                      )
                                         )
v.                                       )    NO. 3:20-cv-00999
                                         )
WARDEN KEVIN GENOVESE,                   )    JUDGE CAMPBELL
                                         )
        Respondent.                      )

## MEMORANDUM OPINION

### I. INTRODUCTION

Darrell Bumpas filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on November 18, 2020, challenging his 2016 convictions and 12-year sentence in Davidson County Criminal Court related to passing a counterfeit check. (Doc. No. 1.) In 2021, the matter was dismissed without prejudice so that Petitioner could return to state court to exhaust his remedies there. The case was subsequently reopened on Petitioner's motion in 2022. (Doc. No. 34.) He filed an Amended Petition (Doc. No. 39), in response to which Respondent filed the state-court record (Doc. Nos. 43, 44) and an Answer. (Doc. No. 46.)

Petitioner did not file a Reply to Respondent's Answer. He did file motions related to Respondent's production of service copies to the residential address where Petitioner appears to have lived while out on parole,[1] beginning sometime in 2021. Those matters were resolved, but then Petitioner gave notice that he had been rearrested in May 2023. (Doc. No. 55.) After his return

---

[1] Online records maintained by the Tennessee Department of Correction reflect the revocation of Petitioner's parole after a hearing, and two new convictions based on offenses that occurred in April 2023. *See* https://foil.app.tn.gov/foil/details.jsp (last visited Aug. 13, 2024).

to state prison, Petitioner filed (1) a motion requesting to be served with additional copies of the record of state-court proceedings, to replace those copies lost during the process of reincarceration (Doc. No. 59); (2) a motion to expand the record to include "simple," "organized," and "direct" answers from Respondent to the claims of the Amended Petition (Doc. No. 61); and (3) a motion to be provided a copy of Respondent's response to the motion to expand the record. (Doc. No. 64.) Those motions remain pending, as does a recent motion complaining of the conditions of Petitioner's confinement. (Doc. No. 71.)

For the reasons discussed below, the Court finds that an evidentiary hearing is not required to resolve this matter, as Petitioner is plainly not entitled to habeas relief. *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (stating that evidentiary hearing is not required "if the record clearly indicates that the petitioner's claims are either barred from review or without merit"). His Amended Petition will be denied, his pending motions will be denied as moot, and this action will be dismissed with prejudice.

## II. PROCEDURAL HISTORY

On October 31, 2014, Petitioner was indicted by a Davidson County grand jury and charged with crimes related to his forging and cashing a check in the amount of $1,810.30. (Doc. No. 43-1 at 3–8.) The five-count indictment charged Petitioner with one count of forgery, one count of criminal simulation, two counts of identity theft, and one count of theft of property. (*Id.*) Petitioner was originally represented by Nashville lawyer Bernard McEvoy, who obtained a court order for a forensic psychiatric evaluation in light of Petitioner's mental health history. (*Id.* at 10–21.) The results of that examination revealed that Petitioner was competent to stand trial and assist with his defense, and that an insanity defense would not be supported. (*Id.* at 22.)

2

On June 20, 2016, Mr. McEvoy moved to withdraw from the representation after Petitioner effectively discharged him; counsel requested that the motion to withdraw be heard on June 22, and it was. (*Id.* at 23–25.) At that June 22 hearing, Attorney John Harding appeared as interim counsel for Petitioner. (*Id.*) The trial court's minutes reveal that Mr. McEvoy was granted permission to withdraw ahead of a "non-jury trial on July 5, 2016," and that the case was set for a status conference on July 1, 2016. (*Id.* at 25.)

The July 5 trial setting was not kept. After Petitioner retained a new lawyer, Mr. Jon Rogers, a bench trial was held on August 1, 2016. (*See* Doc. No. 43-2.) The prosecution called, and defense counsel cross-examined, four witnesses. After the prosecution rested, Petitioner decided to testify in his own defense, against counsel's advice. (*See id.* at 62–100.) The trial court then rendered its verdict, finding Petitioner guilty of all indicted offenses. (*Id.* at 106–111.)

After a sentencing hearing (Doc. No. 43-3), the trial court imposed concurrent, twelve-year sentences on each of the five counts of conviction, to be served at 60% due to Petitioner's status as a career offender. (*See* Doc. No. 43-1 at 28–36.) Attorney Rogers, whom Petitioner had retained only for trial purposes, was then appointed to represent him for purposes of filing a motion for new trial and any subsequent appellate proceedings. (*Id.* at 37; *see* Doc. No. 43-4 at 2–3.) The motion for new trial was heard and denied by the trial court on March 10, 2017. (Doc. No. 43-4.)

The Tennessee Court of Criminal Appeals (TCCA) affirmed Petitioner's convictions and sentence in an opinion filed on February 12, 2018. *State v. Bumpas*, No. M2017-00746-CCA-R3-CD, 2018 WL 817289 (Tenn. Crim. App. Feb. 12, 2018). The Tennessee Supreme Court denied permission to appeal. (Doc. No. 43-25.)

Petitioner timely filed a pro se petition for post-conviction relief in state court. Counsel was appointed (Doc. No. 44-1 at 129) and filed an amended post-conviction petition. (Doc. No.

3

44-2 at 18–22.) The trial court held an evidentiary hearing at which Petitioner and Attorney Rogers

testified. (Doc. No. 44-3.) On June 16, 2020, the court issued an order denying post-conviction

relief. (Doc. No. 44-2 at 75–83.) The TCCA affirmed the trial court in an opinion filed on July 27,

2021, *Bumpas v. State*, No. M2020-00948-CCA-R3-PC, 2021 WL 3160489 (Tenn. Crim. App.

July 27, 2021), and the Tennessee Supreme Court denied permission to appeal. (Doc. No. 44-19.)

Petitioner then timely filed his habeas petition in this Court.

### III. FACTS

The following summary of the evidence at Petitioner's trial and sentencing is taken from

the TCCA's decision on direct appeal:

> On October 31, 2014, the Davidson County Grand Jury indicted the Defendant for
> one count each of forgery over $1,000, criminal simulation over $1,000, theft of
> property over $1,000, and two counts of identity theft. On August 1, 2016, the
> Defendant, through counsel, filed a written motion to waive a trial by jury in
> accordance with Rule 23 of the Tennessee Rules of Criminal Procedure. At a
> subsequent bench trial, Dennis Tulpa testified that on July 24, 2014, he worked as
> a personal banker and teller at Avenue Bank in Green Hills. Mr. Tulpa recalled that,
> around 4:15 p.m., a man entered the bank and cashed check number 17174 from
> "Tennessee Valley Home." Mr. Tulpa reviewed two photographs taken from inside
> Avenue Bank, and he identified himself in the photographs and stated that the
> photographs depicted where he worked. He noted that the photographs had a time
> and date stamp, which read "7–24–2014 at 4:18 [p.m.]" Mr. Tulpa testified that the
> photographs were captured on July 24, 2014, and kept in the regular course of
> business by Avenue Bank. He explained that the photographs had been printed out
> from a bank computer where they were stored. Mr. Tulpa identified the Defendant
> as the customer depicted in the photographs. He stated that the Defendant was a
> "non-client" of Avenue Bank and did not hold an account at the bank. Mr. Tulpa
> explained that tellers were instructed pursuant to bank policy that when cashing
> checks from non-clients they should ask to see a driver's license and copy the
> information from the license onto the back of the check next to the non-client's
> signature. Mr. Tulpa recalled that, when the Defendant approached Mr. Tulpa to
> cash check number 17174, the check bore the Defendant's signature, but he did not
> see the Defendant physically sign it. Mr. Tulpa viewed a copy of the check that was
> presented by the Defendant. Mr. Tulpa testified that he wrote the driver's license
> number, date of birth, expiration date and the date the driver's license was issued
> onto the back of the check. Mr. Tulpa stated that he got the information from the
> driver's license the Defendant presented to him. Mr. Tulpa noted that the

photograph on the driver's license appeared to match the Defendant. After taking this information, Mr. Tulpa cashed the check, giving the Defendant $1,810.30.

Mr. Tulpa explained that the owner of the account on which the check was drawn, Tennessee Valley Homes, Inc. ("TVH"), later contacted Avenue Bank and reported that the check did not belong to them. The bank researched the claim, compared the check cashed by the Defendant to images of checks belonging to TVH[,] and determined the check cashed by the Defendant was counterfeit. Mr. Tulpa stated that it was the policy of the bank that it would not pass along the loss to the client/account holder when a counterfeit check was passed. Instead, the bank incurred the loss of $1,810.30. Mr. Tulpa testified that he specifically remembered the Defendant because Mr. Tulpa did not "cash bad checks every day, so the incident [stood] out in [his] mind."

Detective Kevin Allen of the Metropolitan Nashville Police Department (MNPD) testified that, on July 24, 2016, he responded to Avenue Bank to investigate a possible fraudulent check passed at the bank. The bank provided Detective Allen with still photographs taken from the bank's security cameras that day, as well as a copy of the signed check. Detective Allen compared the date of birth, driver's license number, and driver's license issuance and expiration dates that were written on the back of the check with the information on the Defendant's driver's license and found that the information on the check matched the Defendant's driver's license. Detective Allen also noted that the photograph of the Defendant on his driver's license resembled the man displayed in the still photographs provided by the bank. Detective Allen testified that the routing number and account number of the check passed by the Defendant matched the routing and account numbers for TVH's account. After speaking with bank personnel, Detective Allen spoke to a representative with TVH, Loraine Cash, about the check. Following his conversation with Ms. Cash, Detective Allen presented the case to the grand jury.

Loraine Cash testified that she was the office manager at TVH and that she kept the records of the company's financial transactions as part of her job. Ms. Cash recalled that on July 24, 2014, she "was doing the bank reconciliation and noticed that [she] had a dollar amount on the bank rec[onciliation] that was not in [her] computer." Ms. Cash spoke to a representative from Avenue Bank about the check, and the bank provided her with a copy of the check passed by the Defendant. Ms. Cash testified that the company name listed on the check, "Tennessee Valley Home," was wrong; she explained that the correct name was "Tennessee Valley Homes." She further noted that the date line on the check was in the wrong place. Ms. Cash said that, upon further investigation, she discovered that she had in her possession TVH's check number 17174, and it had not been issued. She stated that the check was "still in the box." Additionally, Ms. Cash searched the company's list of vendors to see if the Defendant had worked for TVH previously. The Defendant's name, however, was not on the vendor list.

Ms. Cash testified that only four people had "signature line authority" to write checks for TVH—Darrel Reifschneider, James Franks, Shelly Molar, and herself. Ms. Cash explained that Mr. Reifschneider was the secretary of TVH and that Mr. Franks was the president. She said that she was familiar with both of their signatures, as well as Ms. Molar's, and stated that their signatures did not look like the signatures on the check passed by the Defendant. She explained that it took two joint signatures for a check to be properly issued by TVH. Based on all of this information, Ms. Cash determined that the check passed by the Defendant was not issued by TVH and was, therefore, counterfeit. Ms. Cash stated that, due to Avenue Bank's policy, TVH did not incur any financial loss. The bank put the $1,810.30 back into TVH's account.

Darrel Reifschneider testified that he was part-owner of TVH, along with James Franks. Mr. Reifschneider explained that he was not involved in the day-to-day operations of the company and that Mr. Franks was the "operating partner." Mr. Reifschneider stated that he did not give permission to the Defendant or anyone else "to create another check other than [TVH's] company check[.]" Mr. Reifschneider testified that neither of the signatures listed on the check passed by the Defendant were his. He stated that, to his knowledge, TVH had never employed the Defendant.

Jane Eakes, a certified document examiner, testified as an expert in handwriting analysis for the State. She explained that she had been provided with twenty known samples of the Defendant's signature, which she compared to the signature on the check passed by the Defendant at Avenue Bank. Ms. Eakes testified that, based on her training and experience, "all of these signatures were written by the same person" and that the Defendant signed the check passed at Avenue Bank on July 24, 2014.

The Defendant testified that on July 24, 2014, he went to Avenue Bank in Green Hills and cashed a check that he had received for "some work that [he] had done two weeks prior." When shown the copy of the check passed at Avenue Bank that day, the Defendant said that it "look[ed] like" the check he cashed. He agreed that his signature was on the back of the check, but he noted that his name was misspelled on the front of the check where he was listed as the payee and that his home address was listed incorrectly. The Defendant stated that he did not notice that TVH was misspelled on the front of the check and stated that the check "appear[ed] to be real."

The Defendant explained that he worked as a subcontractor, and two weeks prior, he responded to an ad on Craigslist about cleaning up an area prior to a building project. The Defendant explained that the work included demolishing a mobile home, cutting down some trees, removing brush, and "tak[ing] all of the trash[.]" The Defendant stated that he could not recall the name of the man from Craigslist who hired him to do the work but stated that the man worked for TVH. [FN: The Defendant claimed that he had worked for TVH previously at a house "off of 8th

Avenue South."]. The Defendant testified that he met with the man who hired him "out [in] East Nashville" and that the man spoke over the telephone to a lady named "Ms. Merriweather," who was "over the accounts of [TVH.]" The Defendant stated that he gave Ms. Merriweather a copy of his identification and a copy of his contractor's license. He denied altering the check before it was cashed, and he denied falsifying the front of the check to make it appear that TVH had written him a check. The Defendant stated that the man who had hired him gave him the check. He explained that he received only $400 for his work out of the $1,800 and that the man who hired the Defendant took the rest of the money to "pay the other workers."

At the conclusion of testimony, the trial court found the Defendant guilty as charged. The trial court held a separate sentencing hearing. . . .

. . .

At the conclusion of the hearing, the trial court took the matter under advisement and then issued a written sentencing order. On each count, the trial court sentenced the Defendant as a Career Offender to twelve years with sixty percent release eligibility. The trial court ordered the sentences to run concurrently and for the Defendant to serve his sentence in confinement. The judgments of conviction were entered on October 27, 2016.

*State v. Bumpas*, 2018 WL 817289, at *1–4.

The proof related to Petitioner's petition for post-conviction relief was adduced at an

evidentiary hearing and summarized by the TCCA as follows:

At Petitioner's post-conviction hearing on November 12, 2019, Petitioner testified that his original meeting with [Mr. Rogers,] his trial counsel[,] lasted three minutes at Starbucks and that he never spoke to his attorney prior to trial. Petitioner complained that his attorney did not investigate his case, nor did his attorney provide him with a copy of the State's discovery. Petitioner testified that the original check in question, rather than a copy of the check, should have been introduced at trial. Petitioner also testified that trial counsel failed to appear in court for prior hearings and when Petitioner arrived in court for what he thought was a hearing, he learned that his case was going to be heard as a bench trial. According to Petitioner, he did not waive his right to a jury trial and told trial counsel that he wanted a jury. He also stated that he objected on the record to the bench trial prior to the commencement of same. Petitioner testified that trial counsel told him he was being forced into having a bench trial. Petitioner explained that he was unaware he was going to court for a trial and objected because his witnesses were not present. He had provided his attorney a list of ten witnesses who would have testified as to his character and the fact that Petitioner often worked with checks in his business.

Petitioner alleged that following his conviction and appeal, he was abandoned by his attorney. Petitioner testified that trial counsel had failed to file an application for a Rule 11 appeal and that Petitioner had not heard from trial counsel since his direct appeal. On cross-examination, Petitioner denied having agreed to a bench trial during his representation with his prior trial counsel. Petitioner further denied that he spoke on the phone with trial counsel on multiple occasions.

Trial counsel testified that when he was retained by Petitioner, Petitioner told him he had already requested a bench trial through his prior counsel. Trial counsel also testified that Petitioner did not express any objection to a bench trial on the morning of the trial, and trial counsel did not tell Petitioner that he was being forced to have a bench trial. Trial counsel explained that he received and reviewed a copy of the State's discovery and that the initial meeting with Petitioner lasted more than three minutes. Additionally, trial counsel had numerous phone calls with Petitioner in preparation for trial. Trial counsel testified that the witnesses provided by Petitioner were all character witnesses and would have been improper to call as fact witnesses at trial. Finally, trial counsel did not believe that filing a request for an appeal was a requirement under the law.

*Bumpas v. State*, 2021 WL 3160489, at *3.

## IV. CLAIMS OF THE AMENDED PETITION

The Amended Petition asserts the following claims to habeas relief:

1.    Petitioner was wrongfully convicted by use of evidence that was improperly admitted over trial counsel's objection, including photocopies, rather than originals, of the fraudulent check and of various emails.

2.    Petitioner was denied his right to trial by jury, as demonstrated by the absence of any record that he waived that right in writing or in open court.

3.    The prosecutor, enabled by former defense counsel, knowingly failed to disclose to trial counsel evidence favorable to Petitioner, despite trial counsel's request for the evidence.

4.    Petitioner was charged with and convicted of multiple crimes, and sentenced to multiple punishments, all for the same criminal conduct.

5.    Petitioner's conviction was secured as a result of the misconduct of the prosecutor.

6.    Petitioner received the ineffective assistance of counsel.

8

(Doc. No. 39 at 5–15.)

## V. ANALYSIS

### A. Legal Standard

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence" upon the conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Prior to the passage of AEDPA, district courts applied de novo review to determine whether "the relevant state court had erred on a question of constitutional law or on a mixed constitutional question." *Williams v. Taylor*, 529 U.S. 362, 402 (2000) (O'Connor,

9

J., concurring). But now, where state courts have ruled on the merits of a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). The Supreme Court has repeatedly held "that AEDPA, by setting forth [these] necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 577 U.S. 73, 77 (2015) (quoting *Burt v. Titlow*, 571 U.S. 12, 19 (2013)).

A state court's legal decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. An "unreasonable application" under this subsection occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *White v. Woodall*, 572 U.S. 415, 426 (2014). A state court decision is not unreasonable under this standard simply because the federal court, "in its independent judgment," finds it erroneous or incorrect. *Williams*, 529 U.S. at 411. Rather, to be actionable under Section 2254(d)(1), the state court's decision "'must be objectively

10

unreasonable, not merely wrong; even clear error will not suffice.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Woodall*, 572 U.S. at 419). An objectively unreasonable decision is one "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination. *Young v. Hofbauer*, 52 F. App'x 234, 237 (6th Cir. 2002). Rather, the determination must be "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)) (internal quotation marks omitted). Moreover, a state court's factual determinations "shall be presumed to be correct" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Davis v. Ayala*, 576 U.S. 257, 271 (2015) ("State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting *Rice v. Collins*, 546 U.S. 333, 338–39 (2006)). Finally, the petitioner may not prevail under Section 2254(d)(2) simply by showing that a fact was unreasonably determined; he "must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

AEDPA's standard for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563

11

U.S. 170, 181 (2011) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). This standard "was meant to be" a high hurdle for petitioners, consistent with the principle that habeas corpus functions as a guard against only "extreme malfunctions" in the state's administration of criminal justice. *Harrington*, 562 U.S. at 102; *see also Woods*, 575 U.S. at 316.

Review under AEDPA is not only demanding, but also ordinarily unavailable to state inmates who have not fully exhausted their remedies in the state court system. Title 28 U.S.C. Sections 2254(b) and (c) provide that, subject to certain exceptions, a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Pinholster*, 563 U.S. at 182; *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)) (federal claim is exhausted if it was presented "under the same theory" in state court). This rule has been interpreted by the Supreme Court as one of total exhaustion, *Rose v. Lundy*, 455 U.S. 509 (1982), meaning that, as of the time of the habeas petition's filing, there can no longer be any available state remedy for any of its claims; if a state remedy is available for any habeas claim, the entire petition is subject to dismissal or, in limited circumstances, to stay and abeyance while the unexhausted claim is pursued in state court. *Rhines v. Weber*, 544 U.S. 269, 275–78 (2005). A habeas petition is thus fully exhausted if each and every claim was first fairly presented to the state appellate court[2] as a federal constitutional claim in substance, if not explicitly. *See Gray v. Netherland*, 518 U.S. 152, 162–63 (1996); *Pillette v. Foltz*, 824 F.2d 494,

---

[2]     In Tennessee, the Court of Criminal Appeals is the highest appellate court to which appeal must be taken in order to properly exhaust a claim. *See* Tenn. Sup. Ct. R. 39; *Adams v. Holland*, 330 F.3d 398, 402–03 (6th Cir. 2003).

496 (6th Cir. 1987) (requiring the presentation of "the legal and factual substance of every claim to all levels of state court review").

However, because the exhaustion requirement "refers only to remedies still available at the time of the federal petition," it may also be "satisfied if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law." *Gray*, 518 U.S. at 161 (citations and internal quotation marks omitted). The doctrine of procedural default is thus a corollary to the rule of exhaustion, one which ordinarily bars habeas review of claims that were not "fairly presented" for merits review in state court, either because they were presented in a way that failed to comport with state procedural rules or because they were not presented at all and no longer can be presented under state law. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (acknowledging "the interplay of these two doctrines" and stating that, to avoid an end-run around the exhaustion requirement and "the values that it serves," "we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts") (emphasis in original; internal citations and quotation marks omitted). If the state court decides a claim on "adequate and independent state grounds"—typically a procedural rule prohibiting the state court from reaching the merits of the constitutional claim—the claim will ordinarily be barred from federal habeas review because of its procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977*); see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same). Likewise, if a claim has never been presented to the state courts, but a state-court remedy is no longer available

(e.g., when an applicable statute of limitations bars a claim or state law deems the claim waived),[3] then the claim is technically (though not properly) exhausted but barred by procedural default. *Coleman*, 501 U.S. at 731–32.

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (emphasis in original). Examples of cause include the unavailability of the factual or legal basis for a claim, interference by officials that makes compliance "impracticable," or attorney error that violates the right to counsel's effective assistance. *Id.* at 753–54. To establish prejudice, a petitioner must demonstrate that the constitutional error asserted in his defaulted claim "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default").

---

[3]       The Tennessee Post-Conviction Procedure Act provides that "[i]n no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment"; it then establishes a one-year statute of limitations for filing that one petition. Tenn. Code Ann. § 40-30-102(a) and (c). The Act further provides that "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," unless that ground could not be presented due to unconstitutional state action, or is based on a new and retroactive constitutional right that was not recognized at the time of trial. *Id.* § 40-30-106(g).

"When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a "narrow exception" to the bar of an unexcused default in cases where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392–93 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). To obtain habeas review under this narrow exception to the procedural-default rule, the petitioner would need to demonstrate his factual innocence, not the mere legal insufficiency of the State's proof; a miscarriage-of-justice claim is not supported by an assertion of mere legal innocence. *Lee v. Brunsman*, 474 F. App'x 439, 442 (6th Cir. 2012) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998), and *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).

B. Claims to Relief

1. Claim 1 – Conviction Based on Improperly Admitted Evidence

Petitioner first claims that he was wrongfully convicted because the State did not introduce originals, but only copies, of the key documentary evidence used against him—most notably, the fraudulent check made out to him and cashed by him at Avenue Bank—and the trial court allowed the use of such evidence despite trial counsel's objection under Tennessee's "best evidence" rule. (Doc. No. 39 at 5; *see* Doc. No. 43-2 at 8–10.) However, unless the fundamental fairness of the trial is compromised by an evidentiary ruling, a claim based on the admission or exclusion of evidence is not cognizable on federal habeas review, Seymour v. Walker, 224 F.3d 542, 552 (6th

15

Cir. 2000), because "federal habeas corpus relief does not lie for errors of state law[.]" *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). And even if it were cognizable, the claim would fail because the trial court determined that the best-evidence rule, Tenn. R. Evid. 1002, "allow[s] for duplicates" in the absence of any argument that the duplicate inaccurately represents the original item (Doc. No. 43-2 at 10),[4] and the state court's interpretation of state law binds this Court on habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Accordingly, Claim 1 has no merit.

  2. Claim 2 – Denial of Right to Trial by Jury

  Petitioner claims that he was denied his right to a trial by jury when the state court proceeded with a bench trial on August 1, 2016, without first obtaining a written waiver of the right or Petitioner's oral consent on the record. (Doc. No. 39 at 7.) Respondent addresses this claim as if it were properly exhausted, on the assumption that it aligns with the similar claim Petitioner pursued in state court: that trial counsel was ineffective in failing to object to a bench trial or otherwise failing to preserve Petitioner's jury-trial right. (*See* Doc. No. 44-8 at 8–9); *Bumpas v. State*, 2021 WL 3160489, at *4–6. Because the TCCA, in adjudicating Petitioner's appeal of his ineffective-assistance claim, affirmed the trial court's underlying findings as to the existence and validity of his jury-trial waiver, and because Respondent does not argue that Petitioner has procedurally defaulted any waiver-related claim, this Court likewise considers Claim 2 to have been properly exhausted. *See Sowell v. Bradshaw*, 372 F.3d 821, 829 (6th Cir. 2004) (finding that respondent had waived any objection to consideration of habeas claim that differed from analogous claim presented in state court; analyzing merits of habeas claim without determining whether, for

---

[4]   *See also State v. Long*, No. W2016-02471-CCA-R3-CD, 2018 WL 3203124, at *13 (Tenn. Crim. App. June 29, 2018) (finding that Tennessee evidentiary rules allow introduction of a photographic duplicate when authenticity of the original document is not genuinely questioned).

exhaustion purposes, it presented a "different legal claim" or only a "variation in legal theory" from state-court claim).

> The TCCA's opinion reflects the following consideration of the waiver issue:
>
> Petitioner argues that trial counsel's representation was deficient because trial counsel failed to preserve Petitioner's right to a jury trial. Petitioner contends that he never signed a Rule 23 written waiver of his right to a trial by jury. He contends that he told trial counsel he objected to a bench trial and that he objected to a bench trial on the record prior to trial. Petitioner further contends that on the day of his bench trial he expected to attend a hearing, not a trial, and that the trial was therefore a surprise to him. Petitioner's testimony at the post-conviction hearing is in conflict with trial counsel's testimony. Trial counsel testified that Petitioner did not object to a bench trial.
>
> While the record does not contain a written waiver signed by Petitioner, the post-conviction court in examining the record credited trial counsel's testimony over Petitioner's testimony[,] finding that:
>
>> [W]hile neither party was able to locate the Petitioner's written waiver entered pursuant to Tennessee Rule of Criminal Procedure 23, the Court's minutes from the date of the trial reflect that a Rule 23 waiver was entered before the trial, and the Court of Criminal Appeals notes in their opinion that a Rule 23 written waiver was entered. *See State v. Bumpas*, No. M2017-00746[-]CCA[-]R3[-]CD, 2018 WL 817289 at *1 (Tenn. Crim. App. Feb. 12, 2018). Accordingly, the Court does not find the Petitioner to be credible on this issue. Rather the Court accredits [trial counsel's] testimony that the decision to have a bench trial was made by the Petitioner and the Court finds that the Petitioner waived his right to a jury trial knowingly and voluntarily.
>
> The post-conviction court found no deficiency by trial counsel. The record supports the post-conviction court's finding that Petitioner knowingly and voluntarily waived his right to a jury trial. Petitioner is not entitled to relief on this issue.

*Bumpas v. State*, 2021 WL 3160489, at *5.

The TCCA's disposition of this claim cannot be disturbed unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts" from the available evidence. 28 U.S.C. § 2254(d)(1)–(2). Under clearly established federal law, the right to a jury trial is fundamental; it can only be waived

17

upon "the express and intelligent consent of the defendant." *Sowell*, 372 F.3d at 831 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 154 (1968), and *Patton v. United States*, 281 U.S. 276, 312 (1930)). Waiver cannot be the product of duress or coercion, nor can it be presumed from a silent record. *Id.* at 832; *United States v. Martin*, 704 F.2d 267, 273 (6th Cir. 1983). However, neither a written waiver nor an oral colloquy regarding the waiver is required "as a matter of federal constitutional law." *Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002); *see Sowell*, 372 F.3d at 832 (citing *Martin*, 704 F.2d at 274–75). Where the record demonstrates that the right to trial by jury has been waived, the burden of demonstrating that the waiver was not valid lies with the defendant. *Sowell*, *supra* (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281 (1942)).

To carry this burden, Petitioner faces a high hurdle. As previously stated, this Court is required to give the state-court decision the benefit of the doubt, *Cullen v. Pinholster*, 563 U.S. at 181, and may not find a state-court factual determination to be unreasonable simply because of a subjective disagreement with the determination. *See Brumfield v. Cain*, 576 U.S. at 314. Rather, the determination must be *objectively* unreasonable in light of the evidence presented in state court. *Miller-El v. Cockrell*, 537 U.S. at 340. Thus, Petitioner in this case must show that the post-conviction evidentiary record was such that "it was unreasonable to credit" trial counsel's testimony that (1) Petitioner did not object to a bench trial, and (2) the record at the time counsel was retained already included a waiver of Petitioner's jury-trial rights. *Rice v. Collins*, 546 U.S. at 338–39.

Here, although the transcript of state proceedings does not contain a written waiver or a verbal waiver given by Petitioner in open court, the record is not silent on the matter. The trial court's minutes reflect that "a written motion to waive a trial by jury . . . signed by [Petitioner] and

his attorney and concurred in by the Attorney General and granted by the Court" was entered on the record on the day of trial. (Doc. No. 43-1 at 26.) The waiver was apparently prepared for entry prior to trial by Petitioner's former counsel, Mr. McEvoy. (*See* Doc. No. 1-1 at 310 (alleging that Petitioner's "previous attorney, . . . Bernard McEvoy, . . . had filed for [waiver] without [Petitioner's] consent"); Doc. No. 43-1 at 41, 42–43 (alleging that trial counsel appeared "only (1) week before a bench trial set by the previous [attorney,] . . . McEvoy").) The trial transcript itself does not betray any surprise by the court or counsel that no jury was to be seated, and the absence of pretrial exclusionary motions from the technical record—which Petitioner ascribes to trial counsel's ineffectiveness—is consistent with counsel's understanding that no jury would be involved. *See Mokris v. United States*, No. 2:20-CV-34-JES-MRM, 2022 WL 743416, at *1 (M.D. Fla. Mar. 11, 2022) ("The purpose of a motion in limine is to permit the pre-trial resolution of evidentiary disputes without having to present potentially prejudicial evidence in front of a jury," and therefore "[t]he rationale underlying pre-trial motions in limine does not apply in a bench trial, where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence." (citation omitted)).

In short, the contemporaneous record supports the state courts' post-conviction finding that a valid jury waiver was entered in Petitioner's case. That finding was reached after an evidentiary hearing at which Petitioner and trial counsel both testified, and the post-conviction trial court credited counsel's testimony over Petitioner's. (*See* Doc. No. 44-2 at 81 (crediting "Mr. Rogers['s] testi[mony] that the case was already set for a bench trial when he came onto the case, and that he understood it was set for a bench trial because the Petitioner told him as much at the time of their first meeting at Starbucks").) The TCCA affirmed this credibility finding upon determining that the record evidence did not preponderate against it, *Bumpas v. State*, 2021 WL 3160489, at *4–5,

19

and upon noting the high level of deference generally owed on appeal "to a post-conviction court's findings concerning witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." *Id.* at *6 (citing *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015)).

The level of deference owed these findings in federal habeas court is even higher. On habeas review, it takes "clear and convincing evidence" to overcome the "high measure of deference [owed] to the state court's findings concerning [a] jury waiver." *Spytma v. Howes*, 313 F.3d 363, 371 (6th Cir. 2002) (quoting *Rickman v. Bell*, 131 F.3d 1150, 1153–54 (6th Cir. 1997)); *see also Cochrane v. Palmer*, No. 09-10589, 2012 WL 917709, at *7 (E.D. Mich. Mar. 19, 2012). Petitioner continues to rely on the fact that the record does not contain the written waiver referenced in the trial court's minutes, as well as on his own version of events between former counsel, trial counsel, and himself. He has not met his evidentiary burden of showing that, notwithstanding the findings of the state courts, he did not consent to proceeding without a jury. Accordingly, Petitioner is not entitled to relief on Claim 2.

3. Claim 3 – Failure to Disclose Favorable Evidence

Petitioner claims that the prosecution "failed to disclose evidence favorable to the accused, and material to this case, upon request of defendant for that evidence." (Doc. No. 39 at 8.) Respondent initially defends by arguing that Claim 3 is noncognizable inasmuch as it does not "identify any constitutional or federal basis" supporting relief. (Doc. No. 46 at 18.) But the Supreme Court long ago settled that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373

20

U.S. 83, 87 (1963). Although the Amended Petition does not cite *Brady*, it nonetheless sufficiently invokes the federal right recognized in that case, so as to render Claim 3 cognizable.

Respondent also argues that Claim 3 is procedurally defaulted. While post-conviction counsel raised this claim before the trial court (*see* Doc. No. 44-2 at 20 (asserting claim that "the State failed to disclose evidence" when it "failed to produce the original checks at issue")), the claim was not presented before the TCCA on either direct or post-conviction appeal. Accordingly, it is procedurally defaulted. Petitioner has the burden of showing cause for the default. He also must show either that he suffered actual prejudice on account of the claimed *Brady* violation, or that a fundamental miscarriage of justice will result if the claim's merits are not considered in this Court.

The Amended Petition can be construed as attempting to argue cause for the default based on allegations that Petitioner's appointed attorneys were overly accommodating to the prosecutor, Assistant District Attorney General Jenny Charles, due to their prior or current working relationships with her. (*See* Doc. No. 39 at 8–9.) But that would not explain the default of this claim during post-conviction litigation, where appointed counsel raised the claim in the trial court, when his opponent was Attorney Charles, but then declined to pursue it on appeal, when Charles was not his opponent. (*Compare* Doc. No. 44-3 at 1 *with* Doc. No. 44-15 at 1.) Petitioner has offered no other grounds for finding cause for the default, and the Court therefore declines to further consider Claim 3.

4. Claim 4 – Multiple Convictions and Sentences for One Criminal Offense

Petitioner claims that he was charged with and convicted of multiple crimes, and sentenced to multiple punishments, all "stemming from one check." (Doc. No. 39 at 10.) Respondent assumes from Petitioner's argument that he is claiming a violation of his constitutional right not to be

21

exposed to double jeopardy, and then asserts that such a claim is procedurally defaulted. (*See* Doc. No. 46 at 19.) This assumption of a double jeopardy claim rather than an excessive-sentence claim is supported by Petitioner's statement in his Amended Petition that counsel on direct appeal acted against Petitioner's wishes when he raised an excessive-sentence claim. (Doc. No. 39 at 10.) But to the extent that Claim 4 arises under the Constitution's Double Jeopardy Clause, it is defaulted––it was not raised as such before the state trial or appellate courts and cannot now be raised there––and Petitioner offers no grounds for excusing the default. And to the extent that it is a claim for an *unconstitutionally* excessive sentence, Claim 4 would also be defaulted because it was not raised as such before the state courts; rather, Petitioner's sentencing claim before the TCCA was based entirely on the failure of his sentence to "comport with dictates and goals of Tennessee Code Annotated Sections 40-35-102 and 103." *State v. Bumpas*, 2018 WL 817289, at *6. Because of Claim 4's unexcused procedural default, Petitioner is not entitled to habeas relief related to his multiplicity of charges and punishments.

### 5. Claim 5 – Prosecutorial Misconduct

In Claim 5, Petitioner asserts that "the prosecutorial misconduct of the Nashville DA's Office" contributed to the harms he asserted in all his previous claims, and conflicted with the prosecutor's duty to ensure that he was not "exploited or treated unfairly or illegally." (Doc. No. 39 at 13.) Petitioner does not specify any breach of this duty that he attributes to Assistant District Attorney Charles, nor does he appear to have raised any claim of prosecutorial misconduct (generally or by reference to specific instances) in state court, other than as a label describing the State's failure to provide original documents when requested, as discussed above in Claim 3. The Court therefore agrees with Respondent that Claim 5 is procedurally defaulted, and that cause excusing the default has not been shown. Even if the Court could reach the merits of this claim of

general prosecutorial misconduct, such misconduct would only be unconstitutional if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see also Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009) ("In general, to merit habeas relief, the prosecutor's conduct must be both improper and flagrant.") (citation and internal quotation marks omitted). The allegations of the Amended Petition fall far short of this standard. Petitioner is not entitled to further consideration of Claim 5.

6. Claim 6 – Ineffective Assistance of Counsel

In his sixth and final claim for habeas relief, Petitioner asserts that trial counsel (as well as former counsel, Mr. McEvoy) "left [him] open to criminal prosecution and conviction" when they "refused all communications with [him]" and failed to oppose the prosecutor's misconduct or otherwise defend with any "decent argument." (Doc. No. 39 at 15.)

A claim of ineffective assistance of trial counsel arises under the Sixth Amendment and is properly analyzed under the two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the petitioner of a fair trial. *Id.* at 687. To meet *Strickland*'s first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89 (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)). The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair." *Lockhart v.*

*Fretwell*, 506 U.S. 364, 372 (1993). It requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

When an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, review under AEDPA is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), in that "*Strickland* requires deference to counsel and AEDPA requires deference to the state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question then is not whether the petitioner's counsel was ineffective; rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Here, Petitioner's ineffective-assistance claim was presented to the TCCA only insofar as it relates to trial counsel's failure to communicate and prepare adequately for trial. The TCCA applied the *Strickland* standard to Petitioner's claim, *see Bumpas v. State*, 2021 WL 3160489, at *4, and determined as follows:

> Petitioner further argues that his trial counsel was ineffective for failure to adequately communicate with Petitioner to prepare for trial and for missing court dates prior to Petitioner's bench trial. At the post-conviction hearing, Petitioner testified that his initial meeting with his trial counsel lasted three minutes, that trial counsel refused to return phone calls, and that trial counsel never reviewed the State's case with Petitioner. Petitioner testified that because Petitioner was unaware that he was to be tried on the day of his bench trial, he was unable to call witnesses in his defense. Trial counsel testified that the initial meeting lasted more than three minutes and that he had numerous phone conversations with Petitioner in preparation for trial. Trial counsel also testified that he had reviewed the State's discovery, as well as Petitioner's proposed list of witnesses. All of the witnesses were character witnesses who could not testify regarding any of the facts of the case.
>
> The post-conviction court did not find Petitioner to be a credible witness, and specifically accredited the testimony of trial counsel regarding his communications

with Petitioner and preparation for trial. Further, the post-conviction court found that trial counsel's communications with Petitioner and his trial preparation were "well within the bounds of competent representation." Appellate courts must generally defer to a post-conviction court's findings concerning witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Petitioner has failed to show that the post-conviction court erred in determining that he was not entitled to relief on his ineffective assistance of counsel claims.

*Id.* at *5–6.

The question before this Court is whether the TCCA applied *Strickland*'s first prong reasonably in reaching its conclusion that Petitioner had failed to prove trial counsel's deficient communication and preparation. In arguing for his position, Petitioner merely repeats his conclusory assertions that trial counsel left him open to conviction by failing to present any competent proof or argument. In weighing the credibility of the conflicting testimony of Petitioner and trial counsel, the post-conviction trial court resolved the conflict in favor of counsel and against Petitioner. The TCCA then found that Petitioner had failed to carry his burden of proving that the trial court got it wrong. This determination, and the consequent determination that Petitioner's ineffective-assistance claim has no merit, were objectively reasonable in light of the post-conviction evidence. AEDPA therefore requires that the TCCA's decision not be disturbed. Accordingly, Claim 6 is without merit.

## VI. CONCLUSION

For the reasons stated above, Petitioner is not entitled to relief under Section 2254. His Amended Petition seeking such relief will be **DENIED**, and this action will be dismissed with prejudice.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a Section 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. A petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R.

25

App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Id.* at 337.

Because reasonable jurists could not debate whether Petitioner's claims should have been resolved differently or are deserving of encouragement to proceed further, the Court will **DENY** a COA. Petitioner may seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate Order is filed herewith.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE